UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BRIGADE HOLDINGS, INC.; FALCON
LIGHTING, INC.; and WILLIAM BETHELL,

                     Plaintiffs,             **MEMORANDUM & ORDER**
                                                                              21-CV-3655 (PKC) (LGD)

          - against -

UNITED STATES SMALL BUSINESS
ADMINISTRATION; and ISABELLA
CASILLAS GUZMAN, in her official capacity
as Administrator,

                     Defendants.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

In this case, Plaintiffs William Bethell ("Bethell") and his two companies—Brigade Holdings, Inc. ("Brigade") and Falcon Lighting, Inc. ("Falcon")—seek declaratory judgments and damages regarding a loan allegedly guaranteed by the United States Small Business Administration ("SBA"). The SBA has now moved to dismiss based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court finds that it lacks subject matter jurisdiction over this case and dismisses it without prejudice.[1]

## BACKGROUND

**I.    Facts**

Bethell, a New York citizen, owns two companies named Brigade and Falcon. (Dkt. 1, ¶ 1.) Together, Plaintiffs retrofit old lighting devices in commercial buildings, bill utility companies

---

[1] The Court recites the facts only to the extent they bear on the issues presented in this motion and, when so doing, "constru[es] the complaint liberally and accept[s] all factual allegations in the complaint as true." *Ford v. D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009); *see also Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (same). As the Court finds only some of the SBA's jurisdictional arguments dispositive, it does not resolve the remaining arguments in the parties' motions.

for their services, and collect payments seventy-five to ninety days later. (*Id.* ¶¶ 1–14.) On April 25, 2018, Falcon and Brigade entered into a $2.5 million loan agreement with BNB Bank ("BNB"). (*Id.* ¶¶ 18–19.) Bethell executed an unconditional guaranty for Brigade's and Falcon's performance, and ten of his affiliates executed conditional limited guarantees over the next two years. (*Id.* ¶¶ 22–24.) The SBA also agreed to act as a guarantor for 75% of the loan, receiving $67,812.50 from Brigade and Falcon in return. (*Id.* ¶¶ 19–20.)

On numerous occasions, Brigade and Falcon explained to BNB that the nature of their business—where payments were delayed and arrived ninety days after they were billed—required them to obtain a "revolving working capital line of credit." (*Id.* ¶ 25.) In April 2018, Plaintiffs asked BNB for such a line of credit, but BNB ignored them. (*Id.* ¶¶ 22, 26.) In June 2018, Plaintiffs emailed the SBA and complained that BNB was failing to service the loan properly by not granting the requested line of credit; the SBA responded that "[it] cannot make [BNB] approve the request [Plaintiffs] describe[d]." (*Id.* ¶ 28.) For seven months, without a revolving line of credit, Brigade and Falcon paid $30,000 per month to BNB while not generating any revenue. (*Id.* ¶ 34.) Only in November 2018, after Plaintiffs had to shut down all their operations in New York seemingly due to insufficient funds, BNB permitted them to obtain a revolving line of credit from a third-party lender. (*Id.* ¶¶ 32–34.)

In April 2020, during the COVID-19 pandemic, the SBA paid six monthly payments on the BNB loan on Plaintiffs' behalf. (*Id.* ¶ 36.) However, due to what was described as an "internal system-wide" malfunction, BNB failed to record these payments and sent sixty late payment notices to Plaintiffs' limited guarantors—some of whom had left Brigade and Falcon to work for their competitors. (*Id.* ¶¶ 37–38.) These erroneous notices, which BNB claimed it was unable to stop sending, harmed Plaintiffs' business significantly. (*Id.* ¶¶ 38–39.) About a year later, Bethell

2

spoke with a BNB officer regarding Brigade's and Falcon's business and floated the possibility of obtaining additional financing. (*Id.* ¶ 40.) The BNB officer expressed openness to the idea of obtaining additional funding, but failed to take any further action about it for at least three months. (*Id.* ¶ 41.) Eventually, Plaintiffs defaulted on the loan. (*Id.*)

## II.     Procedural History

On June 29, 2021, Plaintiffs brought this action, seeking (1) declaratory relief releasing Bethell from his personal guaranty to the SBA due to BNB's non-compliance with relevant SBA regulations and procedures (*id.* ¶¶ 58–63), (2) declaratory relief releasing Bethell from his personal guaranty to any entity due to SBA's negligence (*id.* ¶¶ 64–70), and (3) $67,812.50 in damages (*id.* ¶¶ 71–74).[2] In relevant part, Plaintiffs identify the basis for the Court's jurisdiction as follows:

> Jurisdiction is proper in this Court under 28 U.S.C. § 1331. The Court has remedial authority pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 702. Further, pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction based upon diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

(*Id.* ¶ 6.) On June 2022, the SBA filed the present motion to dismiss, which Plaintiffs then opposed. (Dkts. 20–24.)

## STANDARD OF REVIEW

"Subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Importantly, "[i]f a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir.

---

[2] While the Complaint appears to argue that the basis for this claim is the SBA's breach of contract of its own regulations, Plaintiffs clarify in their opposition papers that the basis for their request is "wanton and negligent supervision." (Dkt. 23, ¶ 40 ("As Defendant's [sic] acknowledge, Plaintiff's [sic] claims sound in tort.").)

3

2008); *see also Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("Where jurisdiction is lacking, . . . dismissal is mandatory." (citations and quotations omitted)). Thus, "[a]fter construing all ambiguities and drawing all inferences in a plaintiff's favor, [the Court] may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (cleaned up); *see also McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." (quoting *Aurecchione*, 426 F.3d at 638)).

## DISCUSSION

### I. Section 1332 Diversity Jurisdiction is Lacking

At the outset, the Court notes that Plaintiffs err when arguing that diversity jurisdiction under Section 1332 is proper. *See Borromeo Escaler v. U.S. Citizenship & Immigr. Servs.*, No. 03 Civ. 8418 (BSJ), 2007 WL 1975485, at *4 (S.D.N.Y. July 6, 2007) ("[T]he diversity of citizenship statute, 28 U.S.C. § 1332, does not provide a basis for suing the United States or its agencies or officers acting in their official capacity."), *aff'd*, *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288 (2d Cir. 2009); *Purisima v. Astrue*, No. 12 Civ. 3528 (WHP) (JLC), 2012 WL 5519295, at *2 (S.D.N.Y. Nov. 14, 2012) ("[Plaintiff] cannot establish jurisdiction under section 1332—the diversity statute—because it does not provide a basis for suing the United States or its agencies or officers acting in their official capacity." (cleaned up)). Because when "defendants are sued as [entities] created by the United States . . . they are not citizens of any state, but have the same relation to one state as to another," *Texas v. Interstate Com. Comm'n*, 258 U.S. 158, 160 (1922), the Court finds that diversity jurisdiction does not lie in this matter.

4

## II. Section 1331 Federal Question Jurisdiction is Lacking

### A. Plaintiffs' Invocation of Remedial Statutes Provides No Basis for Jurisdiction

Plaintiffs' assertion of federal question jurisdiction fares no better. First, the "[Declaratory Judgment Act] provides no independent basis for subject matter jurisdiction." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996); *Fleet Bank, Nat. Ass'n v. Burke*, 160 F.3d 883, 886 (2d Cir. 1998) ("[T]he declaratory judgment statute does not confer jurisdiction on a district court[.]") (citations omitted); *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (The Declaratory Judgment Act "does not expand the subject-matter jurisdiction of the federal courts." (cleaned up)). Thus, Plaintiffs' request for declaratory relief under 28 U.S.C. § 2201, (Dkt. 1, ¶ 8), does not grant them access to federal courts.

Second, Plaintiffs' fleeting reference to the Mandamus and Venue Act, 28 U.S.C. § 1361, is insufficient to establish jurisdiction. "To establish jurisdiction under 28 U.S.C. § 1361, [plaintiffs] must show '(1) a clear right to the relief sought; (2) a plainly defined and peremptory duty on the part of defendants to do the act in question; and (3) that there is no other adequate remedy available.'" *Paulsen ex rel. N.L.R.B. v. All Am. Sch. Bus Corp.*, 986 F. Supp. 2d 142, 147 (E.D.N.Y. 2013) (cleaned up) (ultimately citing *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)). Thus, to prove jurisdiction, Plaintiffs must "show[] [they are] entitled to mandamus relief." *Rahman v. Jaddou*, 2022 WL 6593589, at *2 (2d Cir. Oct. 11, 2022) (affirming dismissal for lack of subject matter jurisdiction of a 28 U.S.C. § 1361 when, *inter alia*, plaintiff has not shown entitlement to relief). In other words, "[a] district court's jurisdiction under the mandamus statute is limited to actions 'seeking to compel the performance of a nondiscretionary duty.'" *Id.* (quoting *Duamutef v. INS*, 386 F.3d 172, 180 (2d Cir. 2004)). The Complaint cites no regulation that required the SBA to act on Plaintiffs' behalf. To the contrary, all of the regulations cited in

5

the Complaint explain that the SBA may act, or not, at "its sole discretion." (Dkt. 1, ¶ 52 (explaining that "[p]ursuant to 13 C.F.R. § 120.524(a)" the SBA may "in its sole discretion" take certain actions); *id.* ¶ 51 (discussing 15 U.S.C. § 634(b)(7) and 13 C.F.R. § 120.535(d) which speak in similar terms); *id* ¶ 29 (similar)). Thus, the Court finds that § 1361 jurisdiction has not been established.

Third, Plaintiffs' jurisdictional claim based on the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, fails for two reasons. First, "[t]he [APA] . . . waives sovereign immunity [only] as to actions in which a party challenges wrongful agency action and seeks 'relief other than money damages.'" *Manners v. U.S. Gov't Sec'y of Def.*, 242 F. App'x 723, 725 (2d Cir. 2007) (quoting § 702); *see also Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) ("Section 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action, except where [] the action also seeks monetary relief[.]"). Because Plaintiffs are suing for monetary damages, (Dkt. 1, ¶¶ 71–74), the APA does not waive the United States' immunity as a sovereign. Second, § 702 does not apply to an "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701. As the SBA's decision whether to service Plaintiffs' loan was discretionary, as evidenced by the regulations the Complaint cites, § 702 is inapplicable.

### B. Plaintiffs' Damages Claim Fails to Comply with the Federal Tort Claims Act's Requirements

Plaintiffs' last claim, seeking damages, which Plaintiffs admit sounds in tort law, runs afoul of the Federal Tort Claims Act's ("FTCA") requirements. It is axiomatic that "[t]he United States is generally immune from suit." *Ford v. United States*, 85 F. Supp. 3d 667, 669 (E.D.N.Y. 2015) (citations omitted). "In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008) (citations omitted). Still, the "United States' waiver of immunity under

6

the FTCA is to be strictly construed in favor of the government." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (cleaned up).

To start, the fact that the SBA can "sue and be sued," 15 U.S.C. § 634(b)(1), does not allow Plaintiffs to circumvent the FTCA, which provides the exclusive remedies for the claims in the Complaint. Indeed, the FTCA provides that "[t]he authority of any federal agency to sue and be sued . . . shall not be construed to authorize suits against [it] on claims which are cognizable [under the FTCA], and the remedies provided by [the FTCA] shall be exclusive." 28 U.S.C. § 2679(a); *see also Hollis Care Grp., Inc. v. Small Bus. Admin.*, No. 19-CV-5695 (JMF), 2020 WL 2521321, at *1 (S.D.N.Y. May 18, 2020) (holding that the SBA's capacity to "sue and be sued" did not exempt plaintiffs from compliance with the FTCA, based on 28 U.S.C. § 2679), *aff'd*, *Hollis Care Grp. Inc. v. United States Small Bus. Admin.*, 848 F. App'x 483 (2d Cir. 2021).

Assuming Plaintiffs' claim is otherwise sufficient, the Court would still lack jurisdiction because of insufficient exhaustion of remedies. Specifically, Section 2675 of Title 28 requires that "the [FTCA] claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). That requirement is "jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *Chekroun v. Small Bus. Admin.*, 32 F. Supp. 2d 514, 515 (D. Conn. 1998) (dismissing, *inter alia*, for failure to exhaust under § 2675). Here, Plaintiffs rely on their June 2018 email to the SBA, about BNB's alleged wrongdoing, to prove exhaustion. (Dkt. 23, ¶ 21.)[3] Plaintiffs' argument fails for three reasons.

---

[3] Confusingly, Plaintiffs also argue that no exhaustion is required because they also bring claims for declaratory relief. (Dkt. 23, ¶¶ 19–20.) As explained *supra*, because such claims cannot support jurisdiction, Plaintiffs must refer the Court to another cause of action to support their Section 1331 argument. Further, Plaintiffs admit that the sole claim that may support such jurisdiction—for money damages—sounds in tort law (*id.* ¶ 40 ("As Defendant's [sic]

7

First, Section 2675 required Plaintiffs to present their "claim," not simply general complaints, to the SBA. Plaintiffs request relief in the form of declaratory judgments and, more pertinently, monetary damages in excess of $67,000; they nowhere allege that they presented those demands to the SBA before initiating this suit.[4] Rather, as discussed, Plaintiffs' June 2018 email complained about BNB not granting Plaintiffs a revolving line of credit. Second, in their email, Plaintiffs complained about *BNB's* conduct, whereas their request for monetary damages here is based on *SBA's* alleged misconduct. (Dkt. 1, ¶ 28.) Third, the argument fails because the SBA replied to Plaintiffs via email and not via "certified or registered mail." 28 U.S.C. § 2675(a).[5] Thus, the Court finds that Plaintiffs' failure to exhaust their remedies dooms their jurisdictional argument.

---

acknowledge Plaintiff's [sic] claims sound in tort")), which by implication falls squarely within the FTCA and must have been exhausted. *See* 28 U.S.C. § 2675(a) (requiring exhaustion of claims for "money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment").

[4] The SBA adduced the sworn declaration of Eric S. Benderson, Associate General Counsel for Litigation at the SBA, stating the same. (Dkt. 22.)

[5] The Court notes, *sua sponte*, that the statute also provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a). However, Plaintiffs do not claim that the SBA failed to resolve their claim, but rather that the SBA's email constituted the final resolution of their claim.

## CONCLUSION

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction over this matter and dismisses it without prejudice. The Clerk of Court is respectfully directed to enter judgment accordingly and terminate this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2023
      Brooklyn, New York